# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MATTHEW MEDDER on behalf of himself and all Others Similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant, | CASE NO.  **21-2325 C**<br>JUDGE |

## CLASS ACTION COMPLAINT

1. Plaintiff Matthew Medder brings this case on behalf of himself and all others similarly situated, alleging as follows:

### INTRODUCTION

2. Plaintiff was an employee of the Defendant United States of America during the relevant time period.

3. Plaintiff was assigned to work in the Goodfellow Federal Complex in St. Louis, Missouri.

4. The Goodfellow Complex was originally built as a munitions plant for the U.S. Army during World War II.

5. In 1966, ownership shifted to the U.S. General Services Administration ("GSA").

6. The GSA has long known that the Goodfellow Complex was contaminated by lead, asbestos, and other known cancer-causing agents.

7. Nonetheless, the GSA continued to allow the building to be used as a work site

1

for thousands of federal workers.

8. Plaintiff and other employees of the United States Government who served in the Complex only became apprised of the truly hazardous situation in 2019 after the Office of Inspector General of the GSA issued a scathing report finding that the GSA's Public Building Service ("PBS") "did not take adequate action to protect tenants, contractors, and visitors from hazards at the Goodfellow complex due to ineffective environmental management programs, policies, and guidance."

9. The report further concluded that from 2002 to 2016, PBS spent close to $2 million on studies "that indicated various hazards were present at the complex and in many cases the results were duplicative of previous studies. Although these studies identified the presence of numerous environmental hazards at the complex, including lead, asbestos, and other known cancer causing agents, PBS failed to comprehensively address the deficiencies and [advise] the complex's occupants of the existing conditions."

10. In addition to its general obligation to keep its employees safe from workplace hazards, the United States of America also is obligated by statute to additionally compensate its employees who are exposed to hazardous conditions and unsafe environments during the course of their work.

11. Because the Goodfellow Complex was contaminated with lead, asbestos, and other known cancer causing agents, employees in the Goodfellow Complex were exposed to hazardous conditions and unsafe environments which entitled them to additional compensation.

12. The United States failed to pay Plaintiff and other similarly situated employees the additional hazard and/or environmental pay differentials that they were entitled to.

13. Because the United States failed to pay Plaintiff and other similarly situated

employees the hazard and environmental pay differential to which they were entitled, it also failed to accurately calculate their regular rate of pay for purposes of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, and therefore failed to accurately calculate their proper overtime wages.

14. Plaintiff therefore brings this action on behalf of himself and all similarly situated federal employees for declaratory judgment, damages and other relief.

## JURISDICTION AND VENUE

15. The United States Court of Federal Claims has jurisdiction and venue over this action pursuant to 28 U.S.C. § 1491.

## PARTIES

16. Plaintiff Matthew Medder was an employee of Defendant United States of America pursuant to Title 5 of the United States Code and the FLSA. From March 9, 2003 to February 28, 2020, he was employed as a Risk Management Specialist within the United States Department of Agriculture in the Goodfellow Complex. During that time, Plaintiff was required to perform duties involving unusual physical hazard within the meaning of 5 U.S.C. §§ 5545(d) and 5343(c). At all applicable times, Plaintiff has been classified as FLSA non-exempt.

17. Defendant the United States is an "employer" and "public agency" within the meaning of 29 U.S.C. § 203(d), (x).

## FACTS

18. 5 U.S.C. § 5545(d) provides that the United States Office of Personnel Management ("OPM") shall establish a schedule of pay differentials for duty involving unusual physical hardship or hazard. Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907, which establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty

3

pay differential for each day that the employee is exposed to hazardous duty.

19. The schedule of hazardous duty pay differentials set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty five percent (25%) hazard pay differential when employees perform work with or in close proximity to "[t]oxic chemical materials when there is a possibility of leakage or spillage" and an eight percent (8%) differential for "[s]ignificant risk of exposure to airborne concentrations of asbestos fibers in excess of the permissible exposure limits." 5 C.F.R. § 550, App. A.

20. Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

21. The schedule of environmental differentials set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations, provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "poisons (toxic chemicals), other than tear gas or similar irritants, which involves potential serious personal injury such as permanent or temporary, partial or complete loss of faculties and/or loss of life including exposure of an unusual degree to toxic chemicals, dust, or fumes of equal toxicity generated in work situations by processes required to perform work assignments wherein protective devices and/or safety measures have been developed but have not practically eliminated the potential for such personal injury" and a four percent (4%) environmental differential when employees perform work with or in close proximity to "(toxic chemicals other than tear gas or similar irritating substances) in situations for which the nature of the work does not require the individual to be in as direct contact with, or exposure to, the more toxic agents as in the case with the work described under high hazard for this class of hazardous agents" and an eight percent (8%) environmental differential when employees perform work "in an area where

airborne concentrations of asbestos fibers may expose employees to potential illness or injury." 5 C.F.R. § 532, App. A.

22. Upon information and belief, during the course of their employment in the Goodfellow Complex, Plaintiff and other similarly situated employees were exposed to high concentrations of asbestos, lead dust, and other toxic chemicals which entitled them to hazard and environmental pay differentials up to 25% of their salary.

23. For example, according to the Inspector General's report, a "November 2003 study identified lead and polychlorinated biphenyls (PCBs) that exceeded acceptable levels around and under the cafeteria. Additionally, a study conducted in August 2008 identified elevated levels of lead in, around, and under the cafeteria. Finally, a separate study was conducted in June 2013, which found excessive levels of PCBs and lead under the cafeteria."

24. Likewise, according to the Report

> PBS did not adhere to OSHA regulations requiring employers to warn employees of potential hazards. For example, although basements and crawlspaces of buildings at the complex were found to contain arsenic, lead, and asbestos, PBS left these areas unsecured and did not install signs warning of the presence of these contaminants until late 2015. Despite these unsafe working conditions, PBS allowed staff and contractors to perform regular maintenance and inspections in the contaminated areas. PBS's inaction prevented building occupants from taking the appropriate steps to protect themselves against the possibilities of harm resulting from their exposure or close proximity to the contaminants present at the complex.

25. Defendant has not compensated Plaintiff and other similarly situated employees with hazardous duty pay differential as set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential as set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

26. The overtime provisions of the FLSA, 29 U.S.C. § 207, require that employers must compensate employees who are classified as non-exempt from the overtime provisions of the FLSA at a rate not less than one and one-half times the regular rate at which they are employed

for work performed in excess of the overtime threshold set forth in the overtime provisions of the FLSA, 29 U.S.C. § 207.

27. Defendant has not properly compensated Plaintiffs who are classified as non-exempt from the overtime provisions of the FLSA and who, during the applicable time period, have performed work in excess of the threshold hourly levels set forth in the overtime provisions of the FLSA, 29 U.S.C. § 207. When the Defendant failed to include hazardous duty pay and/or environmental differentials in calculating the Plaintiff's regular rate of pay, it also failed to include these amounts when calculating and paying overtime owed pursuant to the FLSA.

## TOLLING OF STATUTE OF LIMITATIONS

28. The United States failure to pay the appropriate differential compensation represents a continuing violation. Therefore, Plaintiff and the classes as defined below to include both the Rule 23 and FLSA collective class) submit that each instance that Defendant engaged in the conduct complained of herein and each instance that a member of any Class was denied proper wages constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

29. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

30. Any applicable statutes of limitation have been tolled by Defendant's affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

31. Because of the self-concealing nature of Defendant's actions and their affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

32. Defendant is estopped from relying on any statute of limitations defense because of

its unfair or deceptive conduct.

33. Defendant's conduct was and is, by its nature, self-concealing. Still, Defendant, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding its illegal conduct, and actively have foreclosed Plaintiff and the Classes from learning of their illegal, unfair, and/or deceptive acts.

34. By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CLASS ACTION ALLEGATIONS ("HAZARDOUS DUTY CLASS")

35. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

36. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following class (hereinafter "Hazardous Duty Class"):

> All federal employees who from at any time beginning three years prior to the filing of this Complaint (plus additional time for periods of equitable tolling and/or and fraudulent concealment) performed worked or work within the Goodfellow Complex and were not paid the hazardous duty pay differential for exposure set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential set forth in in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

37. Plaintiff is a member of the Hazardous Duty Class he seeks to represent.

38. The proposed members of the Hazardous Duty Class identified herein are so numerous that joinder of all members is impracticable. Based on reports in various sources, Plaintiff is informed and believe that there are over 2,000 federal employees working within the Goodfellow Complex at any given time.

39. However, only the Defendant's own records will reveal the actual number of federal employees who performed such work. A class action is the most efficient means for

7

resolution of the claims alleged.

40. Questions of law and fact are common to the Hazardous Duty Class, and these questions predominate over any questions that may affect only individual class members. Questions of law and fact that are common to all members of the Hazardous Duty Class include:

- whether the class members performed work with or in close proximity to toxic chemicals and airborne asbestos;
- whether the class members were paid the hazardous duty pay differential for such exposure; and
- whether the class members were exposed to toxic chemicals and airborne asbestos.

41. Plaintiff will fairly and adequately represent and protect the interests of the members of the Hazardous Duty Class because: (1) Plaintiff is willing and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (2) his interests are not antagonistic to those of the other class members; and (3) he is represented by counsel experienced in litigating class actions involving employee claims.

42. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because the Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

43. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Hazardous Duty Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The class members have been damaged and are entitled to recovery as a result of the Defendant's common practice of failing to compensate them correctly as a result of their performance of work with or in close proximity to toxic chemicals and airborne asbestos. Requiring each class member to pursue his or her claim

individually would result in needless duplication of proof and would waste the resources of both the parties and the courts. Finally, monetary relief would be easily calculable for the financial injuries suffered by members of the Hazardous Duty Class, consisting of a twenty-five percent (25%) hazard pay differential for each day they performed work within the Goodfellow Complex.

## COLLECTIVE ACTION ALLEGATIONS

## ("FLSA OVERTIME COLLECTIVE ACTION")

44. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

45. Plaintiff brings this collective action on behalf of himself and other similarly situated employees (hereinafter "FLSA Overtime Collective") who are classified as non-exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"), 5 U.S.C. § 207, who, at any time beginning three years before the filing of this Complaint and/or the filing of consents to become party plaintiffs (plus additional time for periods of equitable tolling and/or and fraudulent concealment), worked in the Goodfellow Complex and worked in excess of the hourly thresholds set forth in the FLSA and whose overtime rate of pay did not include hazardous duty pay and/or environmental differentials.

46. Plaintiff is a member of the FLSA Overtime Collective he seeks to represent and has filed a consent to join with this Court in accordance with 29 U.S.C. § 216(b), which is attached hereto as **Exhibit A.**

47. All members of the FLSA Overtime Collective are classified as non- exempt from the overtime provisions of the FLSA, 29 U.S.C. § 201 *et seq.*, and performed work in excess of the applicable overtime thresholds during weeks in which they performed work in close proximity to toxic chemicals and airborne asbestos and were not paid the hazardous duty pay differential for exposure as set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal

Regulations, or the environmental differential for exposure as set forth in in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations. During this time, FLSA Overtime Collective members were entitled to be paid at overtime rates calculated based on a regular rate of pay incorporating the hazardous duty pay and/or environmental differentials.

48. At all applicable times, Defendant uniformly failed to pay members of the FLSA Overtime Collective Action overtime rates incorporating the hazardous duty pay and/or environmental differentials. In doing so, Defendant violated the FLSA by not paying the FLSA Overtime Collective Action members the applicable overtime rates for overtime work performed.

49. The amount of wages owed and liquidated damages due Plaintiff and the members of the FLSA Overtime Collective Action including the amount of unpaid overtime and liquidated damages due, can be computed for all FLSA Overtime Collective Action members using the same methodologies and Defendant's payroll records and employee data.

50. Upon information and belief, Defendant conducted no analyses to determine whether its failure to pay FLSA Overtime Collective Action members overtime wages incorporating the hazardous duty pay and/or environmental differentials complied with the FLSA.

51. Defendant's violation of the FLSA described above is willful, and in conscious or reckless disregard of the requirements of the FLSA.

52. Because of the actions alleged above, the FLSA Overtime Collective Action members have suffered monetary damages and are entitled to wages owed, liquidated damages, and all other appropriate relief available under the FLSA.

## CLAIMS

### COUNT ONE – Hazard Pay

53. Plaintiffs incorporates all preceding paragraphs as if fully stated herein.

54. 5 U.S.C. § 5545(d) provides that the United States Office of Personnel

Management ("OPM") shall establish a schedule of pay differentials for duty involving unusual physical hardship or hazard.

55. Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§ 550.901- 550.907 regarding hazardous duty pay differentials. These regulations establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty pay differential for each day that the employee is exposed to the hazard.

56. The schedule of hazardous duty pay differentials is contained in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations. See 5 C.F.R. § 550.903.

57. Pursuant to 5 C.F.R. § 550.904, federal agencies "shall pay the hazard pay differential listed in appendix A of this subpart to an employee who is assigned to and performs any duty specified in appendix A of this subpart" unless "the hazardous duty or physical hardship has been taken into account in the classification of his or her position[.]"

58. When an employee performs any duty for which a hazard pay differential is authorized, the agency must pay the hazard pay differential for all hours that the employee worked on the day on which he or she performed the hazardous duty. 5 C.F.R. § 550.905.

59. The schedule of hazardous duty pay differentials set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty five percent (25%) hazard pay differential when employees perform work with or in close proximity to "[t]oxic chemical materials when there is a possibility of leakage or spillage" and also provides for an eight percent (8%) hazard pay differential for work with "[s]ignificant risk of exposure to airborne concentrations of asbestos fibers in excess of the permissible exposure limits."

60. During the course of his employment with Defendant in the Goodfellow Complex,

11

Plaintiff performed work with or in close proximity to "[t]oxic chemical materials when there is a possibility of leakage or spillage" as well as, on information and belief, in areas with "[s]ignificant risk of exposure to airborne concentrations of asbestos fibers in excess of the permissible exposure limits."

61. Exposure to these hazards was not taken into account in the classification of Plaintiff's position.

62. Defendant has failed, and continues to fail to pay Plaintiff and the members of the putative class the twenty-five percent (25%) hazardous duty pay differential for each day that that they are or have been exposed to these hazards through the performance of their official duties.

63. By failing to pay Plaintiff and the members of the putative class a twenty-five percent (25%) or an eight percent (8%) pay differential on these occasions, and continuing to fail and refuse to pay them for this hazardous duty, Defendant has violated, and is continuing to violate, the provisions of Title 5 relating to hazardous duty pay at 5 U.S.C. § 5545(d).

64. As a consequence of Defendant's failure to Plaintiff and the members of the putative class hazardous duty pay, Plaintiff and those similarly situated have been unlawfully deprived of hazardous duty pay and other relief.

65. As a result of the Defendant's willful and purposeful violations of Title 5, there has become due and owing to Plaintiff and the members of the putative class various amounts which have not yet been precisely determined. The employment and work records for Plaintiff and the members of the putative class are in the possession, custody and control of the Defendant and pay Plaintiff and the members of the putative class are unable to state at this time the exact amounts owing to each of them. Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. § 211(c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect

to pay Plaintiff and the members of the putative class from which the amounts of Defendant's liability can be ascertained.

### COUNT TWO – Environmental Differential Pay

66. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

67. Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations regarding wage schedules and rates for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

68. The schedule of environmental differentials is contained in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations. See 5 C.F.R. § 532.511(d).

69. The schedule of environmental differentials provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "poisons (toxic chemicals), other than tear gas or similar irritants, which involves potential serious personal injury such as permanent or temporary, partial or complete loss of faculties and/or loss of life including exposure of an unusual degree to toxic chemicals, dust, or fumes of equal toxicity generated in work situations by processes required to perform work assignments wherein protective devices and/or safety measures have been developed but have not practically eliminated the potential for such personal injury" and also provides for a four percent (4%) environmental differential when employees perform work with or in close proximity to "(toxic chemicals other than tear gas or similar irritating substances) in situations for which the nature of the work does not require the individual to be in as direct contact with, or exposure to, the more toxic agents as in the case with the work described under high hazard for this class of hazardous agents" and also provides for an eight percent (8%) environmental differential when employees perform work "in an area where airborne concentrations of asbestos fibers may expose

13

employees to potential illness or injury." 5 C.F.R. § 532, App. A.

70. The regulations provide that "An employee entitled to an environmental differential shall be paid an amount equal to the percentage rate authorized by the Office of Personnel Management for the category in which the working condition or hazard falls, multiplied by the rate for the second step of WG–10 for the appropriated fund employees and NA–10 for the nonappropriated fund employees on the current regular non-supervisory wage schedule for the wage area for which the differential is payable, counting one-half cent and over as a whole cent." 5 C.F.R. § 532.511(b)(1).

71. An employee entitled to an environmental differential on the basis of hours in a pay status "shall be paid for all hours in a pay status on the day on which he/she is exposed to the situation." 5 C.F.R. § 532.511(b)(3).

72. During the course of his employment with Defendant in the Goodfellow Complex, pay Plaintiff and the members of the putative class performed work in close proximity to "poisons (toxic chemicals), other than tear gas or similar irritants, which involves potential serious personal injury such as permanent or temporary, partial or complete loss of faculties and/or loss of life including exposure of an unusual degree to toxic chemicals, dust, or fumes of equal toxicity generated in work situations by processes required to perform work assignments wherein protective devices and/or safety measures have been developed but have not practically eliminated the potential for such personal injury" and in close proximity to "(toxic chemicals other than tear gas or similar irritating substances) in situations for which the nature of the work does not require the individual to be in as direct contact with, or exposure to, the more toxic agents as in the case with the work described under high hazard for this class of hazardous agents" and "in an area where airborne concentrations of asbestos fibers may expose employees to potential illness or injury."

73. Defendant has failed, and continues to fail to pay Plaintiff and the members of the putative class the eight percent (8%) or four percent (4%) environmental pay differential for each day that Plaintiff and the members of the putative class have been exposed to these hazards through the performance of their official duties.

74. By failing to pay Plaintiff and the members of the putative class the eight or a four percent environmental differential on these occasions, and continuing to fail and refuse to pay Plaintiff and the Class for this hazardous duty, the Defendant has violated, and is continuing to violate the provisions of 5 U.S.C. § 5343(c)(4).

75. As a consequence of defendant's failure to pay Plaintiff and the members of the Plaintiff and the members of the putative class have been unlawfully deprived of environmental differential pay and other relief.

76. As a result of the defendant's willful and purposeful violations of Title 5, there has become due and owing to Plaintiff and the members of the putative class amounts which have not yet been precisely determined. The employment and work records for Plaintiff and the members of the putative class are in the possession, custody and control of the Defendant and Plaintiff and the members of the putative class are unable to state at this time the exact amounts owing to each of them. Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. § 211(c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiff and the members of the putative class similarly situated from which the amounts of Defendant's liability can be ascertained.

### COUNT THREE – FLSA Overtime Pay

77. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

78. The overtime provisions of the FLSA, 29 U.S.C. § 207, require that employers

must compensate employees who are classified as non-exempt from the overtime provisions of the FLSA at a rate not less than one and one-half times the regular rate at which they are employed for hours worked in excess of 40 hours during a workweek as set forth in the overtime provisions of the FLSA, 29 U.S.C. § 207.

79. Defendant failed to pay the correct overtime rate to employees classified as non-exempt from the FLSA overtime provisions who performed work in excess of 40 hours per workweek during weeks in which they entitled to but were not paid the hazardous duty pay differential set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential set forth in in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations. When the Defendant failed to include hazardous duty pay and/or environmental differentials in calculating Plaintiff and the members of the FLSA Overtime Collective regular rate of pay, it also failed to include these differentials when calculating and paying overtime owed pursuant to the FLSA.

80. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), as the GSA has long known that the Goodfellow Complex was contaminated by lead, asbestos, and other known cancer-causing agents resulting in Plaintiff's and the members of the FLSA Overtime Collective's entitlement to Hazard Pay and Environmental Differential Pay.

81. As a result, Plaintiff and the FLSA Overtime Collective members suffered injuries, including monetary damages, and are entitled to wages owed, liquidated damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant relief against Defendant as follows:

(a) Enter judgment declaring that the Defendant violated 5 U.S.C. § 5545(d) by failing and refusing to pay Plaintiff and other members of the putative class the twenty-five percent (25%) hazardous duty pay differential listed in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, for each day that they have been required to work within the Goodfellow Complex;

(b) Enter judgment declaring that the Defendant violated 5 U.S.C. § 5343(c) by failing and refusing to pay Plaintiff and the other members of the putative class prevailing rate employees the eight or four percent environmental pay differential listed in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations for each period that they have been required to work within the Goodfellow Complex;

(c) Enter judgment declaring that Defendant violated its statutory and legal obligations pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and deprived Plaintiff and all other FLSA Overtime Collective Action members of their rights, privileges, protections and compensation under the law, that the violations were not in good faith and that Defendant did not have reasonable grounds for believing that its acts complied with its obligations under the FLSA, and that the violations were willful;

(d) Certify a class consisting of all federal employees who from at any time beginning three years prior to the filing of this Complaint (plus additional time for periods of equitable tolling and/or and fraudulent concealment) performed work within the Goodfellow Complex and were not paid the hazardous duty pay differential set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential set forth in in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations;

(e) Certify that this case may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the

Collective, apprising them of the pendency of this action, and permitting them to assert their FLSA claims;

  (f) Order a complete and accurate accounting of all the compensation to which Plaintiff and the members of the putative class are entitled;

  (g) Award each Hazardous Duty Class member monetary damages in the form of back pay compensation plus interest;

  (h) Award each FLSA Overtime Collective Action the unpaid overtime wages they are owed and monetary damages in the form of liquidated damages;

  (i) Award Plaintiff and all other Hazardous Duty Class and FLSA Overtime Collective Action members their reasonable attorneys' fees to be paid by Defendant, and the costs of this action; and

  (j) Grant such other legal and equitable relief as may be just and proper.

                Respectfully submitted,

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Federal Claims by using the CM/ECF system. I also certify that the foregoing document is being served on Defendant's counsel of record and that service will be accomplished by the CM/ECF system.

    Respectfully,
    **BRADLEY/GROMBACHER LLP**

    */s/ Kiley L. Grombacher*
    Kiley L. Grombacher, Esq.